## Miller v. Commonwealth.

(Decided October 2, 1931.)

W. A. DAUGHERTY for appellant.

J. W. CAMMACK, Attorney General, and GEORGE H. MITCHELL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY HOBSON, COMMISSIONER— Reversing.

Walter Miller was indicted in the Pike circuit court for the murder of Alex McCoy. On the trial of the case

he was found guilty of manslaughter and his punishment fixed at seven years' imprisonment. He appeals.

The facts shown by the proof, briefly stated, are these: Alex McCoy and several other young men went to a baseball game, taking a lot of whisky with them. They were drinking heavily, and after the game was over went to the house of Ruth Daniels, who lived about 200 yards from Walter Miller. One of the young men, being under the influence of whisky, went to sleep when they got there. Alex McCoy was very drunk and was boisterous and profane. Ruth Daniels directed him to leave the house. He did not leave, and at her suggestion some of the other men there took him from the house out to the road. When they got out to the road with him, he fell down in the road and they left him there, lying in the road. One of them went by Walter Miller's house and told Miller that Alex McCoy was lying down there in the road drunk. Miller said that he and McCoy were friends, and he feared that McCoy might get hurt by a car and he would go down and bring him to his house. He went down for this purpose and some of the men at Ruth Daniels helped him to take McCoy up to his house. When they got there they put him in bed in the spare room of Miller's house. He had not been in bed very long when he got up and went out on the porch, calling for "Fatty"; Ruth Daniels was known as "Fatty"; she was not very far off. Some one told her McCoy was calling for her and she went back up to Miller's fence. McCoy came out to the fence and they had a conversation for a few minutes. She then left and he went back up to the house. He did not go into the room in which he had been put to bed, but went into the room in which Miller and his wife usually occupied. Miller and his wife then went into the other room and were preparing to go to bed. Several minutes later McCoy commenced calling, "Charlie, Charlie," a name that he had been in the habit of calling Miller by. Miller left his wife and went in the room where McCoy was. Soon after he got in the room the noise of a difficulty was heard and pistol shots were fired. Miller immediately came out of the room, as his wife was screaming, onto the porch, and said to her that he had to do it; that McCoy was cutting at him with a knife. There was no direct testimony as to what occurred in the room after Miller went in, except his statement, which was, briefly stated, that when he got in the room McCoy said to him that he had come between him

and his woman and he would cut his throat, cursing him and advancing on him with an open knife. Miller told him that he was his friend and that he had never had anything to do about the woman. McCoy continued to advance on him; to try to get him to stop he shot in the floor, and finally to keep McCoy from killing him shot McCoy three times. As soon as McCoy was shot Miller went to the nearest house to ask that man to go up there and stay with his wife and he then went off for a doctor. McCoy was taken to a hospital but died a few days later.

The proof is uncontradicted that Miller and McCoy were friends; that Miller had nothing to do with what had occurred at Ruth Daniels' home and was at home when all the talk took place. He had not seen McCoy for several years. He only went to him, when he was left lying in the road insensible, to take care of him and took him to his house simply for this purpose. The proof, by all the witnesses, was that McCoy was simply crazy drunk. While Miller's testimony stands alone as to what occurred in the room, the conduct that he there attributes to McCoy is simply in line with McCoy's conduct before he got to Miller's house and while there. There was some effort by the commonwealth to prove circumstances conflicting with Miller's account of what took place in the room, but the proof as a whole is insufficient to sustain the verdict.

The court deems it unnecessary to go into the particulars of the evidence on the subjects relied on, but on the whole case agrees with the Attorney General in his conclusion, as set out in the brief filed, that the verdict is flagrantly against the evidence. The court properly refused to give a peremptory instruction in the case. There was sufficient evidence to take the case to the jury. but there is not sufficient evidence on the whole case to show beyond a reasonable doubt that defendant's guilt, and a new trial must be awarded on this ground.

Judgment reversed, and cause remanded for a new trial.